Hon. John Van Lindt Chairman New York State Racing and Wagering Board
Your counsel has inquired whether the proposed cooperative advertising program for bingo called "Bingo Bucks" is consistent with the provisions of section 475 of the General Municipal Law.
Bingo Bucks is described in a letter to the State Racing and Wagering Board from the New York Council of Charitable Organizations ("Council"). The program calls for cooperation between organizations authorized to conduct bingo and retail sponsors. The retail sponsors would donate the services of their employees to distribute flyers, each containing a redeemable coupon entitling the bearer to obtain a bingo admission board valued at one dollar. A person would be eligible to receive a flyer with enclosed coupon upon a purchase from the retail sponsor of merchandise with a value of at least fifteen dollars. Authorized bingo organizations participating in the Bingo Bucks program would pay an up front amount, presumably to get the program going, and would donate to each coupon bearer the one dollar cost of a bingo admission board.
The Council contends that the current advertising practice of preparation and distribution of handbills and posters has resulted in exorbitant costs and limited effectiveness. The Bingo Bucks program is proposed as a less costly and more effective alternative.
Section 490 of the General Municipal Law governs advertising of bingo games. Prior to amendment of section 490 in 1979, permissible advertising was limited to placement of signs measuring sixty square feet in designated places. Section 490 was amended by chapter 147 of the Laws of 1979 to authorize licensees to advertise by means of handbills and posters. Also added was the requirement that all advertisements "be limited to the description of such event as `bingo', the name of the licensed authorized organization conducting such occasions, the license number * * * and the date, location and time of the bingo occasion".
Section 9 of Article I of the State Constitution requires that the State Legislature pass laws strictly regulating bingo. In implementing the provisions of the Constitution, the Legislature expressed its intent that all phases of the supervision, licensing and regulation of bingo be closely controlled and "that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced" (General Municipal Law, § 475).
The proposed Bingo Bucks program is not consistent with section490 of the General Municipal Law. Section 490 authorizes advertising by licensees and limits the content of a handbill advertising bingo to statements of the name of the organization, its license number, and the date, location and time of the bingo occasion. Bingo Bucks, with the use of retail sponsors to advertise and distribute free admission coupons, is more expansive in scope than what is permitted by section 490. Considering the constitutional and statutory requirement that the law be strictly construed, we believe that advertising by anyone other than the licensee and the distribution of redeemable coupons are violations of section 490.
Section 9 of Article I of the State Constitution prohibits any person other than authorized organizations from participating in the management or operation of bingo and prohibits receipt of remuneration by anyone so participating. (See also General Municipal Law, §§ 479 [7] [8], 480 [6], 488.) Under the Bingo Bucks program, the advertising of bingo by a retail sponsor who stands to realize a pecuniary gain from the fifteen dollar minimum purchase requirement is a violation of the constitutional provision. This is so both because advertising is a part of the management and operation of bingo and because the minimum purchase requirement can be viewed as an incentive for a consumer to spend the minimum to receive a bingo coupon, resulting in pecuniary gain to the retail sponsor.
The cited statutes, by specifying those who may participate in bingo and what is a lawful expense, carry out constitutional purposes. The purposes are "to prevent commercialized gambling, prevent participation by criminal and other undesirable elements and the diversion of funds from the purposes authorized" (NY Const, Art I, § 9).
We recognize that in operation, the Bingo Bucks program might result in less costly and more effective advertising of bingo. Whether to permit that or similar programs and how to do so within constitutional limitations are matters for the Legislature to consider.
We conclude that the proposed Bingo Bucks advertising program is outside the scope of existing statutory authority.